# United States District Court
# Middle District of Florida

Case No.:
*General Jurisdiction Division*

### NICHOLAS SCHOCK,

*Plaintiff*,

-vs-

### JAMES F. POTTER,

in his official capacity as Sheriff of Desoto County, Florida,

### ARNOLD LANIER,

in his official capacity as Sheriff of Hardee County, Florida,

### DENISE SAUNDERS,

individually and as an employee of Centurion of Florida, and,

### CENTURION OF FLORIDA, LLC,

A Florida Limited Liability Company,

*Defendant*s.

## COMPLAINT FOR MONEY DAMAGES AND TRIAL BY JURY

**FISCHER REDAVID PLLC**
4601 Sheridan Street, Ste. 320
Hollywood, FL 33021
Telephone: (954) 860-8434
Facsimile: (954) 860-8534
Service@FRTrialLawyers.com (eService Only)

By: */s/ Ian G. Ward II*
    **JORDAN REDAVID, ESQ.**
    Florida Bar No. 109227
    **IAN G. WARD, ESQ.**
    Florida Bar No. 108392

COMES NOW, the Plaintiff, NICHOLAS SCHOCK, ("SCHOCK"), by and through the undersigned attorney, and files this Complaint against Defendants, JAMES F. POTTER in his official capacity as Sheriff of Desoto County, Florida; ARNOLD LANIER, in his official capacity as Sheriff of Hardee County, Florida; DENISE SAUNDERS, individually and in her official capacity a nurse for Centurion of Florida, LLC; and CENTURION OF FLORIDA, LLC, a Florida limited liability company contracted to provide health services to Hardee County.

## JURISDICTION AND VENUE

1.      The predominant claims in this case arise under the United States Constitution and are brought pursuant to federal statutes. U.S. Const. amend. XIV; 42 U.S.C. §§ 1983, 1985. This Court thus has original jurisdiction.  28 U.S.C. §§ 1331.

2.      This Court also has supplemental jurisdiction over the other claims herein which arise either common law or the laws of the State of Florida, as they are so related to those claims for which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

3.      Venue is appropriate because the facts underlying this cause of action arose in Desoto and Hardee counties in Florida.  28 U.S.C. § 1391.

4.      Plaintiff has fully complied with all conditions precedent prior to bringing this action, including, but not limited to, Section 768.28, Florida Statutes.

## PARTIES

1.      The Plaintiff, NICHOLAS SCHOCK ("SCHOCK") is a citizen of the United States, *sui juris*, and is now a prisoner in the Florida state prison located at the Mayo C.I. Annex.

2.      Defendant JAMES F. POTTER ("SHERIFF POTTER") is the Sheriff of DeSoto County, Florida, and responsible for the administration, operation, and supervision of the DeSoto

County jail system, including but not limited to the promulgation and enforcement of rules, regulations, policies, customs and practices relevant thereto.

3.      Defendant ARNOLD LANIER ("SHERIFF LANIER") is the Sheriff of Hardee County, Florida and responsible for the administration, operation, and supervision of the Hardee County jail system, including but not limited to the promulgation and enforcement of rules, regulations, policies, customs and practices relevant thereto.

4.      Defendant DENISE SAUNDERS ("NURSE SAUNDERS") is an individual, *sui juris*, and who was, at all times material, a nurse employed by CENTURION OF FLORIDA, LLC to work at the Hardee County Jail, located at or near 900 East Summit Street, Wauchula, Florida 33873 ("Hardee County Jail").   Based on information and belief, NURSE SAUNDERS is a resident of Wauchula, Hardee County, Florida.

5.      Defendant CENTURION OF FLORIDA, LLC ("CENTURION") is a Florida limited liability company with a principal address 7700 Forsyth Blvd., St. Louis, Missouri, 63105. At all times material, CENTURION was contracted to provide health services to inmates and detainees at the Hardee County Jail, Florida.

## GENERAL FACTUAL ALLEGATIONS

6.      SCHOCK was incarcerated and detained within the Desoto County and Hardee County jail systems beginning on or about October 5, 2016 through on or near May 24, 2017.

7.      At all times material, SCHOCK was within the custody and control of SHERIFFS POTTER and LANIER, respectively.

8.      At all times material, SCHOCK was within the care of SHERIFFS POTTER and LANIER, and CENTURION and NURSE SAUNDERS.

9.      At all times material, all Defendants were acting under color of law.

## COUNT I – NEGLIGENT MAINTENANCE OF JAIL
*(As to Defendant, Sheriff James Potter, in his official capacity only)*

10.    SCHOCK hereby incorporates by reference the averments found in preceding paragraphs 1-9.

11.    At all times material, the DeSoto County Jail was located at or near 208 East Cypress Street, Arcadia, Florida 34266 ("DeSoto County Jail").

12.    At all times material, SHERIFF POTTER had a duty to exercise reasonable care in the maintenance and cleanliness of the DeSoto County Jail.

13.    At all times material, residents within the DeSoto County jail, including SCHOCK, were within a foreseeable zone of risk to be harmed, damaged, or injured by a breach of the aforementioned duty to exercise reasonable care in the maintenance and cleanliness of the DeSoto County Jail.

14.    At all times material, SHERIFF POTTER breached his exercise reasonable care in the maintenance and cleanliness of the DeSoto County Jail by:

    a.  Failing to regularly clean the DeSoto County Jail;

    b.  Failing to regularly disinfect the DeSoto County Jail;

    c.  Failing to regularly sanitize the DeSoto County Jail;

    d.  Failing to maintain adequate cleaning, disinfecting, and/or sanitization supplies and materials within the DeSoto County Jail;

    e.  Failing to train his employees, staff, and/or agents to adequately clean, disinfect, and/or sanitize the DeSoto County Jail; and,

    f.  Failing to supervise his employees, staff, and/or agents to ensure they reasonably cleaned, disinfected, and/or sanitized the DeSoto County Jail.

15.     As a direct and proximate result SCHOCK was harmed when he contracted or became infected with bacteria in an area of his body that caused pain, discomfort, and inconvenience.

16.     As a direct and proximate result, SCHOCK sustained pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, inconvenience, and has incurred (and reasonably will incur in the future) expenses for his medical care and treatment.

17.     SCHOCK requests a trial by jury on all issues so triable in this count.

WHEREFORE the Plaintiff, SCHOCK, hereby demands judgment against SHERIFF POTTER for compensatory damages and asks for any other relief this Court deems proper.

### COUNT II – DELIBERATE INDIFFERENCE
*(As to Defendant, Sheriff James Potter, in his official capacity only)*

18.     SCHOCK hereby incorporates by reference the averments found in preceding paragraphs 1-14.

19.     The provision of health care and services to pretrial detainees within a State or municipality's jail or correctional facility, such as SCHOCK within the DeSoto County Jail, is a governmental act.

20.     At all times material, SHERIFF POTTER knew that SCHOCK had developed or otherwise contracted a serious medical condition (to wit: infection) that, if left untreated or not treated appropriately, posed a substantial risk of harm to SCHOCK.

21.     Despite being aware of SCHOCK's serious medical condition, SHERIFF POTTER was deliberately indifferent by failing to provide SCHOCK with the constitutionally mandated level of care under the Fourteenth Amendment to the United States Constitution.

22.     Despite recognizing that SCHOCK was suffering from severe pain and discomfort, SHERIFF POTTER made no attempts to discover the cause of the pain or treat it any meaningful way.

23.    SHERIFF POTTER provided only cursory treatment of SCHOCK that amounted to no meaningful treatment at all, and deliberately did not afford SCHOCK with the ambulatory, emergency, specialty, and/or off-site medical services he needed.

24.    This deliberate indifference resulted in an unnecessary infliction of pain and suffering, as well as an exacerbation of SCHOCK's medical condition.

25.    SHERIFF POTTER's deliberate indifference to SCHOCK's serious medical condition contributed or caused the development of perirectal abysses and further emergent medical needs.

26.    At all times material, it was the policy, practice, custom, and/or procedure of the DeSoto County Sheriff's Office to be deliberately indifferent to the known serious medical needs of prisoners and/or detainees within the Desoto County Jail, including SCHOCK.

27.    At all times material, it was the policy, practice, custom, and/or  procedure of the DeSoto County Sheriff's Office and/or its employees who have final decision-making authority to refuse and/or delay providing necessary and adequate medical testing and treatment to prisoners and pre-trial detainees within their care, custody, and control.

28.    At all times material, SHERIFF POTTER was deliberately indifferent to SCHOCK's serious medical needs by, *inter alia*, failing to diagnose, failing to render adequate treatment, failing to refer to a doctor, failing to order a follow-up assessment, failing to run diagnostic testing, failing to activate EMS, failing to activate 911, failing to request ambulatory services, failing to arrange specialty care, failing to transport to an urgent care, failing to transport to an emergency room, and/or failing to transport to a hospital.

29.    As a direct and proximate cause of SHERIFF POTTER's deliberate indifference, SCHOCK was injured and suffered adverse, health consequences such as irritation, pain, and suffering, disfigurement, mental anguish, emotional distress, inconvenience, loss for enjoyment of

life, and invasive medical procedures.

30.     SHERIFF POTTER's deliberate indifference was also a direct and proximate cause of SCHOCK incurring past and future medical expenses.

31.     SHERIFF POTTER's deliberate indifference was a violation of SCHOCK's clearly-established federal constitutional rights for which 42 U.S.C. § 1983 provides a remedy.

32.     SCHOCK requests a trial by jury on all issues so triable in this count.

33.     SCHOCK is entitled to recover reasonable attorneys' fees for the successful prosecution of this claim pursuant to 42 U.S.C. § 1988.

WHEREFORE the Plaintiff, SHOCK, hereby demands judgment against SHERIFF POTTER for compensatory damages, punitive damages, attorneys' fees, and asks for any other relief this Court deems proper.

### COUNT III – NEGLIGENT TRAINING & SUPERVISION OF NURSE SAUNDERS
*(As to Defendant, Centurion of Florida, LLC, only)*

34.     SCHOCK hereby incorporates by reference the averments found in preceding paragraphs 1-9.

35.     At all times material, CENTURION was the employer of people it designated to work at the Hardee County Jail, including NURSE SAUNDERS, for the purpose of providing health care services to residents at that jail, including SCHOCK.

36.     CENTURION's relationship with its employees gave rise to a legal duty that extended to the residents of the Hardee County Jail, including SCHOCK, to reasonably supervise and train its employees and/or agents, including NURSE SAUNDERS.

37.     At all times material, CENTURION breached those duties to supervise and train its employees and/or agents, including NURSE SAUNDERS, by:

  a.  Failing to ensure compliance with CENTURION's policies;

  b.  Failing to ensure compliance with the terms of CENTURION's agreement and/or

contract with Hardee County, Florida and/or Hardee County Sheriff's Office;

c. Failing to review the performance of nurses, doctors, and correctional officers in the provision of health services and care to residents, including SCHOCK;

d. Failing to review CENTURION employees' and/or agents' management and maintenance of medical charts and records, including SCHOCK's;

e. Failing to review CENTURION's employees' and/or agents' use of forms, reports, and designated documents in the performance of their duties;

f. Failing to ensure CENTURION employees and agents were properly trained;

g. Failing to recognize misdiagnoses of medical conditions in residents at the Hardee County Jail, including SCHOCK;

h. Failing to recognize CENTURION employees' and/or agents' failure to diagnose medical conditions in residents at the Hardee County jail, including SCHOCK;

i. Failing to review CENTURION employees' and/or agents' medical treatment plans for residents in the Hardee County Jail, including SCHOCK;

j. Failing to review decisions not to utilize emergency medical services for residents in the Hardee County Jail, including SCHOCK;

k. Failing to review decisions not to utilize ambulance services for residents in the Hardee County Jail, including SCHOCK;

l. Failing to review decisions not to utilize specialty or off-site medical services for residents in the Hardee County Jail, including SCHOCK;

m. Failing to review decisions not to order follow-up medical assessments by physicians for residents in the Hardee County Jail, including SCHOCK;

n. Failing to review CENTURION employees' and/or agents' maintenance of sufficient and adequate medical equipment within the Hardee County Jail; and/or,

o.  Failing to review CENTURION employees' and/or agents' decisions with respect to the provision of medical care for residents in the Hardee County Jail, including SCHOCK.

38.  At all times material, SCHOCK was a pretrial detainee and had no legal right to leave the Hardee County Jail.

39.  At all times material, NURSE SAUNDERS was an employee or agent of CENTURION at the Hardee County Jail while SCHOCK was a detainee there.

40.  SCHOCK's interactions and/or encounters with NURSE SAUNDERS within the Hardee County Jail were a direct consequence of NURSE SAUNDERS's employment by CENTURION.

41.  CENTURION owed a duty to residents of the Hardee County Jail, including SCHOCK, to exercise reasonable care in its hiring of safe and competent medical personnel such as nurses, including NURSE SAUNDERS.

42.  CENTURION owed a duty to residents of the Hardee County Jail, including SCHOCK, to exercise a level of care which, under all the circumstances, a reasonably prudent employer would exercise in choosing an employee for the particular duties to be performed.

43.  CENTURION owed a duty to residents of the Hardee County Jail, including SCHOCK, to make appropriate periodic investigation or assessments of employees such as NURSE SAUNDERS during their tenure.

44.  Based on information and belief, CENTURION breached the afore-stated duties.

45.  CENTURION knew, or in the exercise of reasonable care, should have known that NURSE SAUNDERS was unfit and/or incompetent to be employed as a nurse in the Hardee County Jail.

46.  Based on information and belief, a reasonable investigation or periodic assessment

8

of NURSE SAUNDERS while working for CENTURION would have revealed her unsuitability NURSE SAUNDERS for the particular duties to be performed by her for CENTURION.

47.     For example, when it was learned that SCHOCK needed to take regular sitz baths to treat his infected body, NURSE SAUNDERS provided him a property box, not a bath tub, which had previously been used both other detainees within the Hardee County Jail to store his/her/their property, and was not large or sanitary enough for SCHOCK to utilize to administer the baths ordered by his treating physician.

48.     SCHOCK was within the zone of foreseeable risk created by NURSE SAUNDERS's continued employment.

49.     As a direct and proximate cause of CENTURION's breach of the afore-stated duties, SCHOCK sustained serious adverse health-related consequences due to the mis- and/or failure to correctly diagnoses his medical condition; failure to render adequate medical care; failure to recommend adequate medical evaluation by physicians; failure to comply with SCHOCK's physician's orders and prescriptions, including but not limited to sanitary conditions and regular sitz baths; and failure to provide SCHOCK access to access to appropriate and medically reasonable healthcare during his detention.

50.     As a direct and proximate cause of CENTURION's negligent training and supervision of NURSE SAUNDERS, SCHOCK suffered irritation, pain, suffering, mental anguish, disfigurement, emotional distress, inconvenience, and loss for enjoyment of life.

51.     CENTURION's negligent training and supervision of NURSE SAUNDERS was also a direct and proximate cause of SCHOCK incurring past and future medical expenses.

52.     SCHOCK requests a trial by jury on all issues so triable in this count.

WHEREFORE the Plaintiff, SCHOCK, hereby demands judgment against CENTURION for compensatory damages and asks for any other relief this Court deems proper.

**COUNT IV - DELIBERATE INDIFFERENCE REGARDING SCHOCK'S SERIOUS MEDICAL NEEDS FOR AMBULATORY, EMERGENCY, SPECIALTY, AND OUTSIDE SERVICES**
*(As to Defendant, Centurion of Florida, LLC., only)*

53.     PLAINTIFF hereby incorporates by reference the averments found in preceding paragraphs 1-9.

54.     The provision of health care and services to pretrial detainees within a State or municipality's jail or correctional facility, such as SCHOCK within the Hardee County Jail, is a governmental act.

55.     At all times material, the Hardee County Sheriff's Office ("HSCO") regulated and substantially funded CENTURION to perform the governmental act of providing health care services to pretrial detainees within the Hardee County Jail, including SCHOCK.

56.     At all times material, CENTURION was required to train its own employees and HCSO correctional officers in topics related to the provision of health care and services to residents of the Hardee County Jail, including SCHOCK.

57.     At all times material, CENTURION and its employees and HCSO and its employees worked in concert and jointly participated in the enterprise of operating the Hardee County Jail and providing health care and services to pretrial detainees within the Hardee County Jail, including SCHOCK.

58.     At all times material, CENTURION and its employees and HCSO and its employees closely cooperated and coordinated their respective efforts to operate the Hardee County Jail and provide health care and services to pretrial detainees within the Hardee County Jail, including SCHOCK.

59.     As such, at all times material, CENTURION and its employees were acting under the color of state law.

60.     At all times material, SCHOCK was deprived of rights (to wit: sufficient and

adequate health care as a detainee) secured by the Constitution or laws of the United States, including, but not limited to, the Fourteenth Amendment to the United States Constitution and Title 42 of the United States Code.

61.     At all times material, by virtue of its own policies, CENTURION had a duty to, *inter alia*, give residents of the Hardee County Jail, including SCHOCK, access to care; prohibit unreasonable barriers to care; receive care based on need, without regard to financial status; receive equal access to health services even if, as a result of some condition, they could not speak; receive timely laboratory and diagnostic services; have access to hospitalization and/or specialty care; be brought to a community hospital if health care needs were beyond the resources available in the Hardee County Jail; if suffering from a life-threatening condition, to have EMS and 911 activated immediately; and receive medically necessary care.

62.     Based on information and belief, prior to and throughout SCHOCK's detention in the Hardee County Jail, CENTURION had a longstanding and widespread (that is, not just limited to Hardee County, Florida) practice of failing to provide or arrange for specialty medical services for the benefit of residents at jails and prisons in need; or, if providing or arranging such services, it was not done within a reasonable time or with deliberate indifference to the resident's medical needs.

63.     CENTURION had actual or constructive knowledge of the longstanding and widespread practices referenced herein and failed to take action to stop it.

64.     At all times material, CENTURION had a clear financial incentive to delay or outright fail to provide residents at the Hardee County Jail, including SCHOCK, with ambulatory, emergency, specialty, and/or off-site medical services.

65.     At all times material, CENTURION was inherently dissuaded from making objective, accurate medical decisions for residents at the Hardee County Jail, including SCHOCK.

66.     CENTURION was financially motivated to intentionally delay providing ambulatory, emergency, specialty, and/or off-site medical services.

67.     CENTURION was further financially motived to not equip the Hardee County Jail with adequate medical devices and equipment to provide the constitutionally-mandated level of care to detainees, including as to SCHOCK by, *inter alia*, using property boxes to offer sitz baths.

68.     The considerations set forth in this count placed residents at the Hardee County Jail, including SCHOCK, at risk of not receiving the ambulatory, emergency, specialty, and/or off-site medical services they needed; serious medical needs that CENTURION knew of and exhibited a deliberate indifference to.

69.     At all times material, CENTURION knew of SCHOCK's serious medical needs after he contracted serious bacterial infection, which in turn lead to perirectal abysses.

70.     At all times material, including, CENTURION was deliberately indifferent to SCHOCK's serious medical needs by, *inter alia*, failing to diagnose, failing to render adequate treatment, failing to order a follow-up assessment, failing to arrange specialty care, failing to transport to an urgent care, failing to transport to an emergency room, failing to provide SCHOCK with proper medical equipment/devices to take sanitary sitz baths, and/or failing to transport to a hospital.

71.     As a direct and proximate cause of CENTURION's deliberate indifference to SCHOCK's serious medical needs, SCHOCK was injured and suffered adverse, permanent health consequences such as irritation, pain and suffering, mental anguish, emotional distress, inconvenience, loss for enjoyment of life; it further subjected SCHOCK to unnecessary improper medical care, treatment, and housing after he returned to Hardee County Jail.

72.     CENTURION's deliberate indifference was also a direct and proximate cause of SCHOCK incurring past and future medical expenses.

73.     CENTURION's deliberate indifference was a violation of SCHOCK's clearly-established federal constitutional rights for which 42 U.S.C. § 1983 provides a remedy.

74.     The PLAINTIFF requests a trial by jury on all issues so triable in this count.

75.     PLAINTIFF is entitled to recover reasonable attorneys' fees for the successful prosecution of this claim pursuant to 42 U.S.C. § 1988.

WHEREFORE the PLAINTIFF hereby demands judgment against CENTURION for compensatory damages, punitive damages, attorneys' fees, and asks for any other relief this Court deems proper.

### COUNT V – NEGLIGENT TRAINING & SUPERVISION OF NURSE SAUNDERS
*(As to Defendant, Sheriff Arnold Lanier, only)*

76.     SCHOCK hereby incorporates by reference the averments found in preceding paragraphs 1-9.

77.     At all times material, SHERIFF LANIER was the employer of people it designated to work at the Hardee County Jail, including NURSE SAUNDERS, for the purpose of providing health care services to residents at that jail, including SCHOCK.

78.     SHERIFF LANIER and HCSO had a legal duty that extended to the residents of the Hardee County Jail, including SCHOCK, to reasonably supervise and train its employees and/or agents, including NURSE SAUNDERS.

79.     At all times material, SHERIFF LANIER's breached those duties to supervise and train its employees and/or agents, including NURSE SAUNDERS, by:

p.  Failing to ensure compliance with HSCO's policies;

q.  Failing to review the performance of nurses, doctors, and correctional officers in the provision of health services and care to residents, including SCHOCK;

r.  Failing to review employees' and/or agents' management and maintenance of medical charts and records, including SCHOCK's;

s.  Failing to review employees' and/or agents' use of forms, reports, and designated documents in the performance of their duties;

t.  Failing to ensure employees and agents were properly trained;

u.  Failing to recognize misdiagnoses of medical conditions in residents at the Hardee County Jail, including SCHOCK;

v.  Failing to recognize employees' and/or agents' failure to diagnose medical conditions in residents at the Hardee County jail, including SCHOCK;

w.  Failing to review employees' and/or agents' medical treatment plans for residents in the Hardee County Jail, including SCHOCK;

x.  Failing to review decisions not to utilize emergency medical services for residents in the Hardee County Jail, including SCHOCK;

y.  Failing to review decisions not to utilize ambulance services for residents in the Hardee County Jail, including SCHOCK;

z.  Failing to review decisions not to utilize specialty or off-site medical services for residents in the Hardee County Jail, including SCHOCK;

aa. Failing to review decisions not to order follow-up medical assessments by physicians for residents in the Hardee County Jail, including SCHOCK;

bb. Failing to review employees' and/or agents' maintenance of sufficient and adequate medical equipment within the Hardee County Jail; and/or,

cc. Failing to review employees' and/or agents' decisions with respect to the provision of medical care for residents in the Hardee County Jail, including SCHOCK.

80.    At all times material, SCHOCK was a pretrial detainee and had no legal right to leave the Hardee County Jail.

81.    At all times material, NURSE SAUNDERS was an employee or agent of HSCO

and SHERIFF LANIER at the Hardee County Jail while SCHOCK was a detainee there.

82.     SCHOCK's interactions and/or encounters with NURSE SAUNDERS within the Hardee County Jail were a direct consequence of NURSE SAUNDERS's employment by HSCO and SHERIFF LANIER.

83.     SHERIFF LANIER owed a duty to residents of the Hardee County Jail, including SCHOCK, to exercise reasonable care in its hiring of safe and competent medical personnel such as nurses, including NURSE SAUNDERS.

84.     SHERIFF LANIER owed a duty to residents of the Hardee County Jail, including SCHOCK, to exercise a level of care which, under all the circumstances, a reasonably prudent employer would exercise in choosing an employee for the particular duties to be performed.

85.     SHERIFF LANIER owed a duty to residents of the Hardee County Jail, including SCHOCK, to make appropriate periodic investigation or assessments of employees such as NURSE SAUNDERS during their tenure.

86.     Based on information and belief, SHERIFF LANIER breached the afore-stated duties.

87.     SHERIFF LANIER knew, or in the exercise of reasonable care, should have known that NURSE SAUNDERS was unfit and/or incompetent to be employed as a nurse in the Hardee County Jail.

88.     Based on information and belief, a reasonable investigation or periodic assessment of NURSE SAUNDERS while working for SHERIFF LANIER would have revealed her unsuitability NURSE SAUNDERS for the particular duties to be performed by her for SHERIFF LANIER.

89.     For example, when it was learned that SCHOCK needed to take regular sitz baths to treat his infected body, NURSE SAUNDERS provided him a property box, not a bath tub, which

had previously been used both other detainees within the Hardee County Jail to store his/her/their property, and was not large or sanitary enough for SCHOCK to utilize to administer the baths ordered by his treating physician.

90.     SCHOCK was within the zone of foreseeable risk created by NURSE SAUNDERS's continued employment.

91.     As a direct and proximate cause of SHERIFF LANIER's breach of the afore-stated duties, SCHOCK sustained serious adverse health-related consequences due to the mis- and/or failure to correctly diagnoses his medical condition; failure to render adequate medical care; failure to recommend adequate medical evaluation by physicians; failure to comply with SCHOCK's physician's orders and prescriptions, including but not limited to sanitary conditions and regular sitz baths; and failure to provide SCHOCK access to access to appropriate and medically reasonable healthcare during his detention.

92.     As a direct and proximate cause of SHERIFF LANIER's negligent training and supervision of NURSE SAUNDERS, SCHOCK suffered irritation, pain, suffering, mental anguish, disfigurement, emotional distress, inconvenience, and loss for enjoyment of life.

93.     SHERIFF LANIER's negligent training and supervision of NURSE SAUNDERS was also a direct and proximate cause of SCHOCK incurring past and future medical expenses.

94.     SCHOCK requests a trial by jury on all issues so triable in this count.

WHEREFORE the Plaintiff, SCHOCK, hereby demands judgment against SHERIFF LANIER for compensatory damages and asks for any other relief this Court deems proper.

### COUNT VI - DELIBERATE INDIFFERENCE REGARDING SCHOCK'S SERIOUS MEDICAL NEEDS FOR AMBULATORY, EMERGENCY, SPECIALTY, AND OUTSIDE SERVICES
*(As to Defendant, Sheriff Rick Lanier, in his official capacity only)*

95.     PLAINTIFF hereby incorporates by reference the averments found in preceding paragraphs 1-9.

96.     The provision of health care and services to pretrial detainees within a State or municipality's jail or correctional facility, such as SCHOCK within the Hardee County Jail, is a governmental act.

97.     At all times material, the Hardee County Sheriff's Office ("HSCO") regulated and substantially funded CENTURION to perform the governmental act of providing health care services to pretrial detainees within the Hardee County Jail, including SCHOCK.

98.     At all times material, SHERIFF LANIER was the Sheriff and top constitutional officer of HCSO.

99.     At all times material, SHERIFF LANIER was required to train its own employees and HCSO correctional officers in topics related to the provision of health care and services to residents of the Hardee County Jail, including SCHOCK.

100.    At all times material, SHERIFF LANIER and HSCO employees were acting under the color of state law.

101.    At all times material, SCHOCK was deprived of rights (to wit: sufficient and adequate health care as a detainee) secured by the Constitution or laws of the United States, including, but not limited to, the Fourteenth Amendment to the United States Constitution and Title 42 of the United States Code.

102.    At all times material, by virtue of its own policies, SHERIFF LANIER had a duty to, *inter alia*, give residents of the Hardee County Jail, including SCHOCK, access to care; prohibit unreasonable barriers to care; receive care based on need, without regard to financial status; receive equal access to health services even if, as a result of some condition, they could not speak; receive timely laboratory and diagnostic services; have access to hospitalization and/or specialty care; be brought to a community hospital if health care needs were beyond the resources available in the Hardee County Jail; if suffering from a life-threatening condition, to have EMS and 911 activated

immediately; and receive medically necessary care.

103.     Based on information and belief, prior to and throughout SCHOCK's detention in the Hardee County Jail, SHERIFF LANIER had a longstanding and widespread (that is, not just limited to Hardee County, Florida) practice of failing to provide or arrange for specialty medical services for the benefit of residents at jails and prisons in need; or, if providing or arranging such services, it was not done within a reasonable time or with deliberate indifference to the resident's medical needs.

104.     SHERIFF LANIER had actual or constructive knowledge of the longstanding and widespread practices referenced herein and failed to take action to stop it.

105.     At all times material, SHERIFF LANIER had a clear financial incentive to delay or outright fail to provide residents at the Hardee County Jail, including SCHOCK, with ambulatory, emergency, specialty, and/or off-site medical services.

106.     At all times material, SHERIFF LANIER was inherently dissuaded from making objective, accurate medical decisions for residents at the Hardee County Jail, including SCHOCK.

107.     SHERIFF LANIER was financially motivated to intentionally delay providing ambulatory, emergency, specialty, and/or off-site medical services.

108.     SHERIFF LANIER was further financially motived to not equip the Hardee County Jail with adequate medical devices and equipment to provide the constitutionally-mandated level of care to detainees, including as to SCHOCK by, *inter alia*, using property boxes to offer sitz baths.

109.     The considerations set forth in this count placed residents at the Hardee County Jail, including SCHOCK, at risk of not receiving the ambulatory, emergency, specialty, and/or off-site medical services they needed; serious medical needs that SHERIFF LANIER knew of and exhibited a deliberate indifference to.

110.    At all times material, SHERIFF LANIER knew of SCHOCK's serious medical needs after he contracted serious bacterial infection, which in turn lead to perirectal abysses.

111.    At all times material, including, SHERIFF LANIER was deliberately indifferent to SCHOCK's serious medical needs by, *inter alia*, failing to diagnose, failing to render adequate treatment, failing to order a follow-up assessment, failing to arrange specialty care, failing to transport to an urgent care, failing to transport to an emergency room, failing to provide SCHOCK with proper medical equipment/devices to take sanitary sitz baths, and/or failing to transport to a hospital.

112.    As a direct and proximate cause of SHERIFF LANIER's deliberate indifference to SCHOCK's serious medical needs, SCHOCK was injured and suffered adverse, permanent health consequences such as irritation, pain and suffering, mental anguish, emotional distress, inconvenience, loss for enjoyment of life; it further subjected SCHOCK to unnecessary improper medical care, treatment, and housing after he returned to Hardee County Jail.

113.    SHERIFF LANIER's deliberate indifference was also a direct and proximate cause of SCHOCK incurring past and future medical expenses.

114.    SHERIFF LANIER's deliberate indifference was a violation of SCHOCK's clearly-established federal constitutional rights for which 42 U.S.C. § 1983 provides a remedy.

115.    The PLAINTIFF requests a trial by jury on all issues so triable in this count.

116.    PLAINTIFF is entitled to recover reasonable attorneys' fees for the successful prosecution of this claim pursuant to 42 U.S.C. § 1988.

WHEREFORE the PLAINTIFF hereby demands judgment against SHERIFF LANIER for compensatory damages, punitive damages, attorneys' fees, and asks for any other relief this Court deems proper.

### COUNT VII – DELIBERATE INDIFFERENCE
*(As to Defendant, Nurse Saunders, only)*

19

117.    PLAINTIFF hereby incorporates by reference the averments found in preceding paragraphs 1-9.

118.    The provision of health care and services to pretrial detainees within a State or municipality's jail or correctional facility, such as SCHOCK within the Hardee County Jail, is a governmental act.

119.    At all times material, NURSE SAUNDERS worked as a nurse in the Hardee County Jail and provided medical care to detainees housed there, including SCHOCK.

120.    At all times material, NURSE SAUNDERS was a state actor acting under color of law.

121.    At all times material, NURSE SAUNDERS deprived SCHOCK of rights (to wit: sufficient and adequate health care as a detainee) secured by the Constitution or laws of the United States, including, but not limited to, the Fourteenth Amendment to the United States Constitution and Title 42 of the United States Code.

122.    At all times material, NURSE SAUNDERS had actual knowledge that SCHOCK had contracted a serious and potentially life-threatening bacterial infection and/or perirectal abscess.

123.    NURSE SAUNDERS further knew that SCHOCK needed to have regular access to his treating medical providers and specialists outside of the Hardee County Jail.

124.    NURSE SAUNDERS further knew that, as prescribed by his treating medical providers and specialists outside of the Hardee County Jail, SHOCK needed to have access to regular sitz baths to prevent a worsening of his conditions.

125.    At all times material, NURSE SAUNDERS was deliberately indifferent to SCHOCK's serious medical needs described in this count by, *inter alia*, failing to diagnose, failing to render adequate treatment, failing to arrange and/or timely arrange specialty care, failing to

transport to an urgent care, failing to transport to an emergency room, failure to provide reasonable means for SCHOCK to take his prescribed sitz bath (instead providing him a property box), and/or failing to transport to a hospital.

126.    As a direct and proximate cause of NURSE SAUNDERS's deliberate indifference to SCHOCK's serious medical needs, SCHOCK was injured and suffered adverse, health consequences such as headaches and irritation, pain and suffering, mental anguish, emotional distress, inconvenience, and loss for enjoyment of life.

127.    NURSE SAUNDERS's deliberate indifference was also a direct and proximate cause of SCHOCK incurring past and future medical expenses.

128.    NURSE SAUNDERS's deliberate indifference was a violation of SCHOCK's clearly-established federal constitutional rights for which 42 U.S.C. § 1983 provides a remedy.

129.    The PLAINTIFF requests a trial by jury on all issues so triable in this count.

130.    PLAINTIFF is entitled to recover reasonable attorneys' fees for the successful prosecution of this claim pursuant to 42 U.S.C. § 1988.

WHEREFORE the PLAINTIFF hereby demands judgment against NURSE SAUNDERS for compensatory damages, punitive damages, attorneys' fees, and asks for any other relief this Court deems proper.

**DATED** this 25th day of February, 2019.

**FISCHER REDAVID PLLC**
4601 Sheridan Street, Suite 320
Hollywood, FL  33021
Telephone: (954) 860-8434
Facsimile: (954) 860-8584
Service@FRTrialLawyers.com (Service Only)
Ian@FRTrialLawyers.com (Primary)
Rachel@FRTrialLawyers.com (Secondary)
Jordan@FRTrialLawyers.com (Tertiary)

By: */s/ Ian G. Ward II*
   **JORDAN REDAVID, ESQ.**

21

Florida Bar No. 109227
**IAN G. WARD, ESQ.**
Florida Bar No. 108392